IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

**KIMBERLY C.,**

       **Plaintiff,**

v.                                         Civil Action 1:22-cv-637
                                           Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

       **Defendant.**

## OPINION AND ORDER

Plaintiff, Kimberly C., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 13) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her application for DIB on May 20, 2020, alleging disability beginning September 26, 2019. (R. at 165–66). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on August 5, 2021. (R. at 30–69). The ALJ denied benefits in a written decision on September 17, 2021. (R. at 11–29). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on November 4, 2022 (Doc. 1), and the Commissioner filed the administrative record on February 6, 2023 (Doc. 10). The matter has been briefed and is ripe for consideration. (Docs. 13, 14, 15).

A. **Relevant Hearing Testimony**

The ALJ summarized the reports presented to the administration and testimony from Plaintiff's hearing:

> [Plaintiff] alleges disability due to cancer of the oropharynx, neuropathy of the upper and lower extremities, hearing loss, obstructive sleep apnea, anemia, and hypothyroidism.  During the hearing, [Plaintiff] testified that she has residual side effects from chemotherapy, including neuropathy in her feet and hands, numbness and tingling, and poor balance.  She testified that she has difficulty multitasking, and following a recipe without referring back to it several times while cooking. She testified that she is able to garden, make paper crafts, and type on a computer, but then later testified that she occasionally has difficulty typing sometimes.  She testified that she is able to lift up to twenty pounds, stand for an hour at a time, and walk for a mile or two.

(R. at 20–21).

B. **Relevant Medical Evidence:**

The ALJ summarized the medical records as to Plaintiff's impairments:

> The medical record supports a degree of limitation, as [Plaintiff] periodically reported throat swelling, dysphagia, hearing loss, tinnitus, fatigue, weight loss, cough, shortness of breath, cold intolerance, gait imbalance, chemo induced neuropathy, reduced dexterity, and numbness in the hands and feet (1F/284, 3F/288, 4F/412, 476, 5F/74, 195, 8F/9, 19, 9F/13, 10F/463, 12F/9, 14, 18, 30, 14F/2, 15F/2, 17F/6). A laryngoscopy revealed an abnormal mass, which pathology later confirmed as cancer of the oropharynx (1F/311-317, 2F/68). [Plaintiff] underwent a tracheostomy (2F/293).  She then underwent chemotherapy in November and December of 2019 (3F/296, 4F/409, 5F/195).  While her treatments initially made her feel nauseous, [Plaintiff] reported that she was okay by January 2020 (6F/25, 69).  She later followed up with post-cancer physical therapy for physical deconditioning, impaired mobility, and activities of daily living (13F).

> However, despite these complaints, examinations frequently showed unremarkable examination findings, including normal clinical findings of strength and range of motion (9F/7, 10F/435, 455, 490, 495, 563, 621, 12F/26, 15F/3, 17F/9).  Audiograms showed worsening hearing thresholds (4F/476, 7F/91).  However, [Plaintiff] also reported that her hearing aides helped (12F/21, 15F/2).  The objective record also shows two neurocognitive examinations (16F-17F).  While these examinations indicated a degree of impairment in processing speed and visual extended working memory tasks, each assessment also indicated that [Plaintiff] was generally capable of maintaining her activities of daily living but with some difficulties tracking group conversations (16F/7-8, 17F/4).

> \*\*\*
>
> Physical examinations frequently showed unremarkable examination findings, including normal clinical findings of strength and range of motion (9F/7, 10F/435, 455, 490, 495, 563, 621, 12F/26, 15F/3, 17F/9). In fact, [Plaintiff] admitted that she walked her dog every day, walked for a total of thirty minutes to an hour every day, and even began horseback riding, indicating an ability to perform many physical functions despite her alleged gait imbalance issues (11F/4, 2F/30, 16F/8, 17F/4, Hearing Testimony). In a recent March 2021 examination, [Plaintiff] also had a pain score of zero, further indicating that she has recovered to a considerable extent since her cancer treatment (14F/4).

(R. at 21).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2024, and has not engaged in substantial gainful activity since September 26, 2019, her alleged onset date of disability. (R. at 16–17). The ALJ determined that Plaintiff suffered from the severe impairments of cancer of the oropharynx, neuropathy of the upper and lower extremities, hearing loss, obstructive sleep apnea, anemia, and hypothyroidism. (R. at 17). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equal a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to light work as defined in 20 CFR 404.1567(b) except [Plaintiff] is able to stand and/or walk for a total of four hours in an eight-hour workday. She is never able to climb ladders, ropes, and scaffolds, but is frequently able to climb ramps or stairs. She is occasionally able to stoop, kneel, crouch, or crawl. [Plaintiff] must avoid exposure to hazards such as dangerous, moving machinery or unprotected heights as a safety precaution. She should not be required to carry large objects in front of her, such that she cannot see her feet or also walk on uneven terrain as a part of the job. [Plaintiff] is slightly limited in her ability to remember and recall events due to slightly decreased processing speed, sustained attention and inhibitory control, working memory, shifting and flexibility, and phonemic fluency, to the extent that she is, for example, unable to perform functions such as memorizing lines and performing in a play. She is occasionally, but not frequently, able to track conversations as a part of a

3

group.

(R. at 20).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff is capable of performing her past relevant work as an administrative clerk. This work does not require the performance of work-related activities precluded by her RFC. (R. at 24). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since September 26, 2019. (R. at 25).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

4

**III. DISCUSSION**

In her Statement of Errors, Plaintiff contends that the ALJ erred in her RFC determination by not properly assessing the total limiting effects of Plaintiff's cancer. (Docs. 13, 15). In particular, she says that the ALJ improperly assessed her ability to walk and stand, to lift and carry, and to speak and hear while on the job. (Doc. 13 at 7–14). Further, she says that the ALJ did not properly consider her strong work history in determining the credibility of Plaintiff's self-described limitations. (*Id.* at 14–16). The Commissioner counters that the ALJ properly evaluated the evidence in the record and adopted a residual functional capacity supported by substantial evidence, including the medical evidence and medical opinions in the record. (Doc. 14).

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. *See also* 20 C.F.R. §§ 404.1513(a), 404.1520c. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5).

Additionally, when a Plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

5

WL 1119029, *3 (Mar. 16, 2016).[2]  First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  *See also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that she considered the relevant evidence.  *Roach v. Comm'r Soc. Sec.*, No. 1:20-cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).  Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record.  *Rogers*, 486 F.3d at 247 (internal quotation omitted).  Nonetheless, it remains the province of the ALJ—not the reviewing court—to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the rest of the record.  *See id.*  Therefore, "absent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed.  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

---

[2] Soc. Sec. R. (SSR) 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016.  *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

Here, the ALJ found that Plaintiff's symptoms did not limit Plaintiff's capacity to work as much as she alleged. The ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, in accordance [with] SSR 16-3p, the undersigned finds [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(R. at 21). Plaintiff says that this credibility determination was not supported by substantial evidence and affected her RFC with regard to her ability to walk and stand, to lift and carry, and to speak and hear. The Court addresses each limitation in turn.

The ALJ found that Plaintiff had the RFC "to stand and/or walk for a total of four hours in an eight-hour workday." (R. at 20). The ALJ further accommodated Plaintiff's balance concerns by stating that "[s]he should not be required to carry large objects in front of her, such that she cannot see her feet or also walk on uneven terrain as a part of the job." (*Id.*). Plaintiff says this "is not reasonably supported by the record[,]" particularly her own testimony and records related to her chemoradiation-induced neuropathy. (Doc. 13 at 7–9). For example, she cites an examination at which her bilateral lower extremity strength was 4/5, and another at which she had a positive Romberg's test and neurological exam that demonstrated glove and stocking neuropathy for both pin and proprioception with secondary effects on balance dependent gait tasks. (*Id.* at 8) (citing R. at 4810, 4816, 4855). The ALJ acknowledged such medical records in which Plaintiff reported "fatigue, . . . gait imbalance, chemo induced neuropathy, reduced dexterity, and numbness in the hands and feet." (R. at 21). Yet, the ALJ found that "despite these complaints, examinations frequently showed unremarkable examination findings, including normal clinical findings of strength and range of motions." (*Id.*) (citing R. at 3527 (normal range of motion), 4545 (normal strength in extremities), 4565 (negative for back pain, gait problem, and neck pain), 4605 (normal

7

strength in extremities), 4673 (normal range of motion), 4731 (negative for back pain, gait problem, and neck pain), 4788 (normal range of motion), 4830 (same), 4853 (5/5 strength in all extremities)). In other words, the ALJ considered the records on which Plaintiff relies but found other evidence counteracted Plaintiff's claims.

Similarly, Plaintiff notes her testimony about her activities of daily living. She stated that she could stand for an hour and walk a mile or two, and that she fell when she leaned over to pick up a tomato in her garden. (Doc. 13 at 7–9) (citing R. at 46, 53). The ALJ found, however, that Plaintiff's reports that "she walked her dog every day, walked for a total of thirty minutes to an hour every day, and even began horseback riding[ ] indicat[ed] an ability to perform many physical functions despite her alleged gait imbalance issues." (R. at 21) (citing R. at 4758 (noting Plaintiff walked her dogs as part of her daily routine), 4792 (noting Plaintiff started horseback riding), 4842 (noting Plaintiff's daily life at home and hobbies were well-maintained), 4848 (noting Plaintiff's home exercise routine involved walking for thirty minutes to an hour each day)). Finally, the ALJ noted a recent examination from March 2021 which showed Plaintiff presented with a pain score of zero, suggesting "she has recovered to a considerable extent since her cancer treatment." (R. at 21) (citing R. at 4825). That same record demonstrated normal strength in Plaintiff's extremities. (R. at 4826).

In sum, the ALJ relied upon substantial evidence, including objective medical evidence, Plaintiff's activities of daily living, and the duration and intensity of Plaintiff's symptoms and pain, in evaluating the functional limitations imposed by Plaintiff's alleged symptoms. Plaintiff has not shown a compelling reason why this credibility determination should be disturbed.

Plaintiff further alleges that the ALJ erred in assessing that she had the RFC to perform light work (R. at 20), which requires "lifting no more than 20 pounds at a time with frequent lifting

8

or carrying of objects weighing up to 10 pounds" C.F.R. § 404.1567(b). In particular, Plaintiff says that her testimony that "carrying anything over 5 pounds can throw her balance off[,]" and that carrying "anything heavier than 10 pounds would be difficult[,]" makes the ALJ's conclusion unreasonable. (Doc. 13 at 9) (citing R. at 52). But the RFC is not in conflict with this testimony because it does not require her to carry objects over ten pounds. Only the lifting requirement goes up to twenty pounds. And this is consistent with Plaintiff's own testimony about her capabilities:

> Q. Okay. How much weight do you think you can lift and carry?
>
> A. I can lift more than I can carry. I don't know. I don't lift any -- I mean I can usually lift a laundry basket. I can probably lift 20 pounds but carrying it is way different because of my balance problems. Carrying things is hard because anything especially that's more than like five pounds can throw off your balance. And I already have trouble with my balance.
>
> Q. How about something like a gallon of milk? Could you carry that from the car, you know, in from the car?
>
> A. Oh, yes. Yes.
>
> Q. Okay. That's about eight, eight to ten pounds so anything heavier than that might be harder, but maybe ten pounds might be okay?
>
> A. I can, yeah, I would say ten pounds but especially, you know, like a gallon of milk is not bulky. Like if I was, like to carry a box, even if it only weigh[ ]ed two pounds, if I can't see my feet --
>
> Q. Right.
>
> A. -- that's a problem.

(R. at 52). As noted above, the ALJ accommodated Plaintiff's concern about carrying objects in front of her, by including a directive that "[s]he should not be required to carry large objects in front of her, such that she cannot see her feet" in her RFC. (R. at 20).

So, the ALJ's lifting and carrying restrictions were supported by Plaintiff's own testimony. There is therefore no credibility determination for Plaintiff to even challenge. Still more, the restrictions were supported by the objective medical evidence. The ALJ noted "[o]ne discharge

summary [which] stated [Plaintiff] was unable to lift more than ten pounds or engage in strenuous activity for 1–2 weeks[,]" but found it ultimately unpersuasive because the limitations were temporary, and "generally inconsistent with the rest of the record over time, which shows normal findings of strength[.]" (R. at 24) (citing R. at 658 (discharge following Plaintiff's quad scope with biopsy and awake tracheostomy)). As noted above, the ALJ carefully identified normal findings of strength throughout the record. The ALJ's lifting and carrying restrictions are therefore supported by substantial evidence, including Plaintiff's testimony and the objective medical evidence.

Next, Plaintiff asserts that the ALJ erred in assessing the impact of her cognitive and communicative limitations, including her "difficulty with word finding in high pressure situations, dry mouth, and impaired hearing," on her ability to perform her past relevant work as an administrative clerk. (Doc. 13 at 11–12). In particular, she says the ALJ failed to incorporate her finding that Plaintiff had a mild limitation in interacting with others into the RFC. (*Id.* at 12–13). However, the ALJ did incorporate cognitive and communicative limitations into the RFC. She found that Plaintiff:

> is slightly limited in her ability to remember and recall events due to slightly decreased processing speed, sustained attention and inhibitory control, working memory, shifting and flexibility, and phonemic fluency, to the extent that she is, for example, unable to perform functions such as memorizing lines and performing in a play. She is occasionally, but not frequently, able to track conversations as a part of a group.

(R. at 20). And the vocational expert testified that with these limitations, Plaintiff could return to her past relevant work as an administrative clerk. (R. at 58–61).

The ALJ relied upon substantial evidence in arriving at these limitations. Specifically, the ALJ found that treatment notes demonstrated normal clinical findings in memory, insight, judgment, behavior, eye contact, and speech. (R. at 18–19) (citing R. at 1525, 1734, 2093, 2954,

10

3527, 4574, 4759, 4772, 4830). And Plaintiff was able to complete continuing education to renew her occupational therapist license, though she reported she would have to review material if she was interrupted. (R. at 18) (citing R. at 49–50). The ALJ further noted that though Plaintiff reported she did not socialize very often, she also reported that she had friends and a strong relationship with her sister and father. (R. at 19) (citing R. at 4758). Finally, the ALJ characterized Plaintiff as "articulate in her testimony" at the hearing, "and well-versed in the facts and nuances of her case." (R. at 18).

These findings were substantiated by the psychological consultative examiner, who opined that while Plaintiff "may experience a subjective sense of reduced effectiveness in concentration at times, [ ] objective changes at a level prompting performance concerns by others are not to be expected." (R. at 23) (citing R. at 4762). The ALJ found this opinion persuasive, as it was supported by the examiner's own mental status findings, and consistent with the record as a whole. (*Id.*). At base, the ALJ properly assessed Plaintiff's testimony, in conjunction with objective medical evidence, medical opinion, and her activities of daily living to determine the cognitive and communicative limitations in the RFC. Plaintiff has not shown a compelling reason why that determination should be disturbed.

Finally, Plaintiff says that regarding all the ALJ's credibility findings, she failed to consider Plaintiff's "exemplary work history." (Doc. 13 at 14). Plaintiff says that because she worked for "over 40 years, with wages over $60,000 in each of the last six full years in which she worked[,]" she had "incentive to work if she could[.]" (*Id.* at 15). The ALJ's failure to acknowledge this in the credibility determination, she says, is reversible error. The Court disagrees.

It is true that "good work history may be deemed probative of credibility[.]" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (quoting *Schaal v. Apfel*, 134 F.3d

11

496, 502 (2d Cir. 1998)). In particular, an extensive work history, in conjunction with "attempts to continue working despite [ ] disability support [a plaintiff's] credibility." *Id.* Here, Plaintiff was diagnosed with a tongue mass that was likely carcinoma on September 19, 2019. (R. at 516, 549). Plaintiff's last date of work—and the date of her alleged onset of disability—was September 26, 2019. (R. at 176). Plaintiff underwent surgery the following day for a tracheostomy, and to biopsy the mass. (R. at 658). Plaintiff then completed chemoradiation treatment between October and December 2019. (R. at 2748). But Plaintiff gave no testimony that she later made any efforts to work with her new limitations.

That makes this case distinct from *White*, in which the plaintiff tried to work over the course of two years despite his nerve pain. 312 F. App'x at 780–81. The Court agrees that in a case in which there is evidence that a plaintiff attempted to work despite her disability, it would be reversible error for the ALJ to ignore such evidence. Without a similar history here, however, there was no error. Instead, the ALJ properly assessed Plaintiff's subjective complaints and limitations in view of the entire record and supported that assessment with substantial evidence. *Rogers*, 486 F.3d at 247.

### IV. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 13) and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.


Date: October 16, 2023 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE